## In re Anonymous No. 52 D.B. 89

Disciplinary Board Docket no. 52 D.B. 89.

GILARDI, *Member,* March 16, 1990—Pursuant to Pennsylvania Rule of Disciplinary Enforcement 208(d), the Disciplinary Board of the Supreme Court of Pennsylvania submits its findings and recommendations to this honorable court with regard to the above-captioned petition for discipline.

## HISTORY OF PROCEEDINGS

A petition for discipline containing three charges of misconduct was filed against respondent. The first charge arose out of respondent's failure to register and pay the attorney's annual assessment fee as required by Enforcement Rule 219. Respondent was placed on "inactive status" by order of the Supreme Court because he failed to register and pay his annual attorney's assessment. The first charge essentially alleges that respondent engaged in the unauthorized practice of law when he continued to represent clients while he was on "inactive status." The petition for discipline alleges, in charge I, that respondent violated D.R. 1-102 (A)(1), D.R. 1-102(A)(4), D.R. 1-102(A)(5) and D.R. 3-101(B).

The second charge arose when respondent paid his delinquent annual attorney's fee with a client trust account check. Disciplinary Counsel alleges, in charge II, that respondent violated D.R. 9-102(A) by using a client trust account check to pay a personal obligation.

The third charge deals with respondent's representation of a client in a criminal case. Respondent failed to pursue post-verdict motions that he filed on behalf of the client. Disciplinary Counsel alleges, in charge III, that respondent violated D.R. 6-101(A)(3), D.R. 7-101(A)(1), D.R. 7-101(A)(2) and D.R. 7-101 (A)(3).

Respondent was personally served with the petition for discipline. Respondent did not retain an attorney or file an answer to the petition for discipline. Respondent was personally served with subpoenas to attend the prehearing conference and the disciplinary hearing. Respondent did not attend either the prehearing conference or the disciplinary hearing, and so both hearings proceeded ex parte.

Hearing Committee [ ] found that respondent did not violate any disciplinary rules with respect to charge I, found a "technical violation" of D.R. 9-102(A) in connection with charge II, and found that respondent violated four disciplinary rules as set forth in charge III.

Two members of the hearing committee recommended that respondent be suspended for a period of one year to run consecutively with respondent's current suspension.* One member of the hearing

* On October 11, 1989, the Supreme Court ordered that respondent be suspended for a period of six months. That suspension was ordered in an unrelated case. In that case, respondent violated D.R. 6-101(A)(3) (neglect), D.R. 1-102(A) (willful failure to appear for an informal admonition), and D.R. 7-101(A)(2) (intentionally failing to carry out a contract of employment).

committee dissented and would recommend a con-current six-month suspension.

## SUMMARY OF THE EVIDENCE

The evidence in this case may be summarized as follows: Pennsylvania has a registration system which requires that every attorney admitted to practice in any court of this Commonwealth must register annually with the Administrative Office of Pennsylvania Courts and pay an annual fee. Proceeds from the registration fees are used to defray the costs of disciplinary administration and enforcement. See Rule 219, Pa.R.D.E.

In June 1986, a registration form and instructions concerning payment of the attorney's annual fee for assessment year 1986-87 were sent by regular mail to respondent's last known office address by the Administrative Office.

Respondent did not pay the attorney's annual fee for 1986-87, as requested by the Administrative Office. The Administrative Office mailed a second registration form with instructions to respondent, in the fall of 1986. Respondent did not answer or otherwise respond to the Administrative Office's second mailing. Thus, respondent did not register or pay the annual registration fee, as required of Pennsylvania lawyers, for the 1986-87 assessment year.

The Supreme Court, by order dated April 30, 1987, placed respondent on "inactive status" because he did not register or pay his 1986-1987 annual fee. Rule 219, Pa.R.D.E., provides that the Supreme Court will immediately enter an order transferring an attorney to "inactive status" if an attorney fails to file a registration statement and fails to pay the

annual fee. Pursuant to the court's order, respondent was placed on "inactive status" as of May 30, 1987.

On May 6, 1987, the Administrative Office sent a letter to respondent, at his last known address, notifying him that the Supreme Court ordered that he be placed on "inactive status" as of May 30, 1987. Respondent was advised, in the Administrative Office's letter, that he had been placed on "inactive status" for failure to file a registration statement and for failure to pay the annual assessment. The letter was sent by certified mail, return receipt requested.

On two occasions the postal authorities left notices, at respondent's last known address that certified mail was awaiting pickup. The letter from the Administrative Office notifying respondent that he had been placed on "inactive status" was returned to the sender with a postal service notation of "unclaimed."

An attorney on "inactive status" cannot accept any new cases or act as an attorney in any legal matter. Pa.R.D.E. 217(d). Nevertheless, respondent continued to represent clients and undertook new cases even though he was on "inactive status." A check of the [ ] County court docket showed that respondent was involved in 44 cases during the time he was on "inactive status."

The foregoing facts gave rise to charge I. The first charge involves the allegation that respondent engaged in the unauthorized practice of law when he continued to represent clients while he was on "inactive status."

Respondent's "inactive status" continued until March 1988. Respondent was transferred to "active status" on March 14, 1988 after he had paid the annual attorney's fee arrearages he owed for assess-

ment years 1986-87 and 1987-88. Respondent's method of paying his arrearages led to the second charge of misconduct.

Respondent paid his overdue annual attorney's fees with a check drawn on his client trust account. The face of the check states:

*[Respondent]*

*Law Office*

*Client Trust Account*

Disciplinary Counsel alleges, in charge II, that respondent violated D.R. 9-102(A) when he used a client trust account check to pay a personal obligation. Disciplinary Rule 9-102(A) generally requires that client funds be deposited in a bank account in which no funds of the lawyer are deposited.

Charge III stems from respondent's representation of a client in a criminal case. The client's case was tried to a jury, and on November 19, 1987 the jury returned a guilty verdict. On November 30, 1987, respondent filed post-verdict motions. Argument on the motions was scheduled for December 10, 1987. Respondent failed to brief the case or appear for the argument. The client orally dismissed respondent from the case on January 16, 1988; however, respondent did not advise the trial court that he had been discharged by the client. On February 2, 1988, the trial court dismissed and denied the client's motions for arrest of judgment and a new trial. Then, on February 9, 1988, respondent filed a "petition to withdraw as counsel" with the trial court. The trial court granted respondent's motion to withdraw and appointed substitute counsel for the client. The client's new attorney appealed to the Superior Court. The Superior Court ordered

the trial court to hear the client's post-verdict motions nunc pro tunc.

Respondent was charged with the following Disciplinary Rule violations as a result of his conduct in the criminal case.

(a) Disciplinary Rule 6-101(A)(3)—dealing with a lawyer neglecting a legal matter entrusted to the lawyer;

(b) Disciplinary Rule 7-101(A)(1)—dealing with a lawyer intentionally failing to seek the lawful objectives of a client through reasonably available means;

(c) Disciplinary Rule 7-101(A)(2)—dealing with a lawyer intentionally failing to carry out a contract of employment entered into with a client for professional services; and

(d) Disciplinary Rule 7-101(A)(3)—dealing with a lawyer intentionally prejudicing or damaging a client during the course of the professional relationship.

Thus, charge III concerns respondent's failure to pursue post-verdict motions that he initiated on behalf of a client.

## FINDINGS OF FACT

The Disciplinary Board of the Supreme Court of Pennsylvania hereby adopts the findings of fact of the hearing committee, as modified herein.

### Finding of Fact as to Charge I

(1) From December 1983 through approximately July 1985 appropriate attorney registration forms and annual fees were submitted by respondent.

(2) In or about June 1986, a registration form and instruction letter for the 1986-87 fee were sent by the Court Administrator's Office to respondent at [ ].

(3) On the registration form submitted by respondent in July 1985, the address specified in (2) above was certified by respondent as both his home and office address.

(4) At no time subsequent to July 1985 did respondent file or cause to be filed with the Court Administrator's Office or the Disciplinary Board a notice of change of address for his office/home.

(5) Respondent did not respond in any manner to the June 1986 mailing.

(6) Sometime during the fall of 1986, a second registration form and instruction letter were sent to respondent to the same address.

(7) The instruction letter contained relevant portions of the text of Rule 219 (Pa.R.D.E.) notifying respondent of the necessity of filing a registration statement and paying the annual fee to maintain active status. Also included was an advisement that if, after receiving notice, an attorney fails to pay the registration fee, such failure shall be deemed a request for transfer to inactive status. Upon entry of an order by the Supreme Court placing such an attorney on inactive status, the attorney may not practice law in the Commonwealth and must promptly notify all clients of such and otherwise comply with the requirements of Rule 217 (Pa.R.D.E.).

(8) Respondent did not respond in any manner to the second notice of registration mailing.

(9) By letter dated May 6, 1987, the Administrative Office advised respondent that pursuant to an order of the Supreme Court dated April 30, 1987, respondent was placed on inactive status. The letter was sent by certified mail, return receipt requested, to [ ].

(10) Twice the postal authorities left notices at [ ] that a certified mailing was awaiting pickup.

Subsequently, the letter was returned to the sender on or about May 24, 1987, with a notation, "Unclaimed."

(11) Pursuant to the order of April 30, 1987, respondent was formally placed on inactive status as of May 30, 1987. He continued on inactive status until March 14, 1988, at which time he paid the annual assessment for the years 1986-87 and 1987-88.

(12) On March 14, 1988, respondent indicated that his current address was [ ], the same as that previously on file.

(13) Despite the issuance of the Supreme Court order of May 30, 1987, and prior to respondent's reinstatement to active status, respondent undertook new cases (some by court appointment and some on private retention) and continued to represent clients in ongoing cases in [ ] County. He continued to meet with clients, file documents, represent clients in court, and generally hold himself out as an attorney licensed to practice law in the Commonwealth.

(14) Contrary to respondent's obligation under Rule 217, at least with respect to 39 separate cases referenced in the petition for discipline, he did not promptly notify clients of his inactive status and consequent inability to act as an attorney; he did not notify opposing counsel of his inability to practice law; he did not withdraw his appearance as counsel of record; he did not decline appointment or engagement in new cases from May 30, 1987 through March 14, 1988; and he did not file with the secretary of the Disciplinary Board a statement of compliance.

(15) By order of the Supreme Court dated December 29, 1988, respondent was again placed on inactive status as of January 28, 1989, due to his failure

to pay the 1988-89 assessment. The board notified the President Judge of [ ] County of respondent's change of status. In his letter to the board dated February 9, 1989, President Judge [A] advised the board that he would forward copies of all correspondence to respondent at his correct address, [ ]. On February 15, 1989, respondent paid the 1988-89 assessment and updated his address as above.

(16) Neither the President Judge of [ ] County nor the prothonotary received correspondence relating to the Supreme Court's May 30, 1987 order, and there was no evidence presented that notice thereof was published in the local newspaper or in the law journal. Further, the board's notice directed to respondent by certified mail was returned to the board unclaimed.

### Findings of Fact as to Charge II

(1) On or about March 9, 1988, respondent sent a check in the amount of $210, payable to the "Administrative Office of Pa. Courts," constituting payment of his attorney annual fee and annual assessment for the Client Security Fund for the years 1986-87 and 1987-88.

(2) The check was drawn upon account number [ ] at the [ ] Bank, [ ], and the face of the check indicates that this account is a "client trust" account.

(3) No client funds were commingled with respondent's funds.

(4) Respondent did not convert any client funds.

(5) There is no evidence that respondent used client funds to pay a personal obligation.

## Finding of Fact as to Charge III

(1) On or about September 17, 1987, respondent was appointed by the Court of Common Pleas, Criminal Division, [ ] County, to represent [B] with regard to the matter of *Commonwealth v. [B],* docketed at number [ ] of 1987.

(2) On November 19, 1987, a jury trial was held, resulting in a guilty verdict being entered against [B].

(3) On November 30, 1987, respondent filed or caused to be filed on behalf of [B] a "motion for arrest of judgment and for a new trial."

(4) On December 10, 1987, the court ordered that "the prothonotary of [ · ] County is directed to schedule the captioned case for argument court in January 1988."

(5) A copy of the order of December 10, 1987 was sent to respondent by the clerk of court's office on that same date.

(6) Respondent advised [B] that respondent would file on his behalf a brief in support of the motion.

(7) Respondent did not submit a brief on the motion or appear for the scheduled oral argument on January 8, 1988.

(8) Because of respondent's failure to proceed timely on the motion, the court issued the following order:

"Now, February 2, 1988, the captioned case having been scheduled for argument court on January 8, 1988, upon the defendant's motion for arrest of judgment and for new trial, there having been no oral argument and no submission of written briefs, the court dismisses and denies the defendant's motion for arrest of judgment and new trial."

(9) A copy of the February 2, 1988 order was sent to respondent by the clerk of court's office.

(10) On February 9, 1988, respondent filed a "petition to withdraw as counsel." Therein respondent asserted that [B] had orally fired respondent on January 16, 1988 during an unannounced visit by him to respondent's home. Respondent also referred to a letter he received from [B] on January 28, 1988 in which [B] "stated his displeasure with respondent's services." Finally, respondent made mention of a written notice dated February 2, 1988 advising [B] of his intent to withdraw from the case. All of the assertions made by respondent of course post-dated the hearing date which he had earlier ignored.

(11) On February 10, 1988, the court granted respondent's motion to withdraw. [C], Esq. was appointed to represent [B].

(12) On March 4, 1988, [C] filed a "motion to rescind order of February 2, 1988." The motion specifically asserted that the order dismissing the post-trial motions had been entered because no brief was submitted and no oral argument was presented by respondent, and that unless the order would be rescinded, [B] would be deprived of his right to raise post-trial issues and have those issues properly decided by the court.

(13) On March 4, 1988, the motion to rescind was denied, and an appeal was taken to the Supreme Court.

(14) The Superior Court ordered the trial court to hear, nunc pro tunc, the "motion for arrest of judgment and for a new trial," that was filed on behalf of [B].

## DISCUSSION AND CONCLUSIONS OF LAW

At the outset, we note that respondent, as was his right, chose not to participate in the within proceeding. Respondent received a fair and impartial hear-

ing due to the efforts of Disciplinary Counsel and the hearing committee.

We will now discuss each of the charges that were filed against respondent.

### Charge I

Respondent failed to register and pay his annual attorney's fee which resulted in his being transferred to "inactive status" by order of the Supreme Court. Respondent undertook new cases and continued to represent clients in ongoing cases while he was on "inactive status." Respondent was charged with a multitude of Disciplinary Rule violations because he continued to practice while on "inactive status." Basically, the thrust of this charge is that respondent engaged in the unauthorized practice of law when he continued to represent clients and take in new cases while on "inactive status."

We must determine whether the notices and statements provided for in Enforcement Rule 219 were sent in accordance with the rule.

The evidence shows that the registration form for assessment year 1986-87 was sent by regular mail to respondent's last known business address. Respondent did not return the executed registration form or his annual fee. Thereafter, respondent was advised, by letter dated May 6, 1987, that pursuant to Supreme Court order dated April 30, 1987, he had been placed on "inactive status" as of May 30, 1987, for failure to file a registration statement and for failure to pay the annual attorney's assessment. Copies of the May 6, 1987 letter were sent to Judge [A], President Judge of the Court of Common Pleas of [ ] County, and to the prothonotary of [ ] County. The May 6, 1987 letter was sent certified mail,

return receipt requested. The certified mailing was returned "unclaimed."

The evidence also shows that neither Judge [A] nor the [ ] County prothonotary received a copy of the May 6, 1987, letter advising respondent that he had been placed on "inactive status." Moreover, Judge [A] stated in a letter that respondent denied receiving any correspondence pertaining to his (respondent's) transfer to "inactive status" in 1987.

We cannot presume that respondent received the registration form for assessment year 1986-87 in view of Judge [A's] letter. The evidence of record is not clear and convincing that the mandate of Rule 219 of the Enforcement Rules was followed. Accordingly, we concur with the hearing committee's conclusion that respondent did not violate the Disciplinary Rules set forth in charge I.

## Charge II

Disciplinary Rule 9-102 governs an attorney's handling of moneys and other properties on behalf of clients. Respondent paid his annual attorney's fee with a check drawn on his "client trust account." However, Disciplinary Counsel concedes that there is "no evidence that he [respondent] used client funds to pay personal debts." The record does not disclose that any client funds were commingled with respondent's funds, or that respondent converted any client funds. Indeed, the record does not disclose that there was any client money in the trust account. The record only discloses that respondent used a trust account check—not entrusted money. Without more, we cannot find a violation of D.R. 9-102(A).

## Charge III

This charge deals with the manner in which respondent represented a client in a criminal case. After a jury rendered a guilty verdict, respondent filed a post-verdict "motion for arrest of judgment and for a new trial." Respondent then failed to brief or argue the motions. As would be expected, the trial court dismissed and denied the post-verdict motions. Thereafter, another lawyer was appointed to represent the client. The case was appealed, and the Superior Court ordered the trial court to hear the post-verdict motions nunc pro tunc.

Clearly, respondent failed to advance or protect his client's interests by his inaction. Respondent's failure to take action on behalf of his client violated the Code of Professional Responsibility. We conclude that respondent neglected a legal matter entrusted to him, in violation of D.R. 6-101(A)(3), by failing to brief and argue the post-verdict motions. We also conclude that respondent intentionally failed to seek his client's lawful objectives, intentionally failed to carry out his contract of employment, and intentionally prejudiced his client, under the circumstances, in violation of Disciplinary Rules 7-101(A)(1) through 7-101(A)(3).

## RECOMMENDATION

Based on the foregoing discussion, the Disciplinary Board recommends that respondent be suspended from the practice of law for a period of three months, commencing April 11, 1990. The board recommends further that, pursuant to Rule 208(g), Pa.R.D.E., respondent be directed to pay the necessary expenses incurred in the investigation and prosecution of this proceeding.

Messrs. Tumulo, Schiller and Hill dissent, and would recommend a six-month suspension. Mr. Eckell abstained, and Ms. Heh did not participate in the adjudication.

## ORDER

And now, June 4, 1990, upon consideration of the report and recommendations of the Disciplinary Board dated March 16, 1990, it is hereby ordered that [respondent] be and he is suspended from the bar of this Commonwealth for a period of three months, commencing April 11, 1990. It is further ordered that respondent shall pay costs to the Disciplinary Board pursuant to Rule 208(g), Pa.R.D.E.